IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DEPARTMENT OF EDUCATION, STATE OF HAWAI'I,<br><br>Plaintiff,<br><br>vs.<br><br>A.U., by and through his Parents, KRISTINE and GREG U. et al.,<br><br>Defendants. | CV. NO. 11-00085 AWT-BMK<br><br>FINDINGS AND RECOMMENDATION THAT THE ADMINISTRATIVE HEARINGS OFFICER'S DECISION BE REVERSED AND THE CASE BE REMANDED TO THE ADMINISTRATIVE HEARINGS OFFICER |

FINDINGS AND RECOMMENDATION THAT THE ADMINISTRATIVE HEARINGS OFFICER'S DECISION BE REVERSED AND THE CASE BE REMANDED TO THE ADMINISTRATIVE HEARINGS OFFICER

Plaintiff State of Hawai'i Department of Education ("DOE") appeals an Administrative Hearings Officer's ("Hearings Officer") Findings of Fact, Conclusions of Law and Decision ("Decision"), rendered pursuant to Hawaii Administrative Rules ("HAR") Title 8, Chapter 56.[1]  (Decision, R. at 2417.)  The

---

[1] HAR Title 8 Chapter 56 was repealed in November of 2009 and renumbered in HAR Title 8 Chapter 60.  Chapter 56 was repealed prior to the administrative hearing in this case, but subsequent to the imposition of school furloughs.  It is unnecessary to decide which iteration of the administrative rules applies because the parties have not shown, and the Court has not found, any material difference between the provisions of the Individuals with Disabilities Education Act, HAR Title 8 Chapter 56, and HAR Title 8 Chapter 60 for the purposes of this case.

1

Hearings Officer concluded that the State's furlough program unilaterally changed A.U.'s educational program and constituted a material failure to implement A.U.'s individualized education program ("IEP"). (Id. at 2431.) For the following reasons, the Court FINDS and RECOMMENDS that the Hearings Officer's Decision be REVERSED and the case be REMANDED for further proceedings consistent with this opinion.

## BACKGROUND

The following facts were established by the Hearing Officer's Decision and were not specifically disputed on appeal. A.U. is an eleven year old boy with autism. (Id. at 2418, ¶ 1.) A.U. is not able to communicate well and can become frustrated. (Id. at ¶ 3.) This leads to behaviors "such as tantrumming, wailing, throwing himself on the ground, and being resistant." (Id.) A.U's mother ("Mother") testified that consistency is important for A.U., and that A.U.'s maladaptive behaviors will increase if he is not in a consistent environment. (Id. at ¶ 5.) The clinical psychologist also observed that A.U. responds better to a predicable schedule. (Id. at 2419, ¶ 12.)

A.U.'s May 29, 2009 IEP provided him with the following services: 1830 minutes of special education per week, 540 speech-language therapy minutes per week, 1170 counseling minutes per quarter, and daily transportation. (Id. at ¶

2

15.) The services were to be provided in both general and special education settings. (Id. at 2419-20, ¶ 15.) The IEP states that A.U. "will be included with General Education peers for school-wide and grade-level activities such as: recess, lunch, [and] developmentally appropriate field trips with 1:1 Adult Support." (Id. at 2420, ¶ 19.) The Hearings Officer found that A.U.'s IEP "was to provide Student with daily opportunities to mainstream in order to develop his communication and socialization skills." (Id. at 2420-21, ¶ 21.) At the time A.U.'s parents agreed to the IEP, the DOE had not yet implemented furloughs. (Id. at 2420, ¶ 20.)

On October 23, 2009, the State implemented furloughs due to budgetary concerns. (Id. at 2421, ¶ 22.) There were seventeen furloughs during the 2009-2010 school year and none of the services in A.U.'s IEP were provided on furlough days. (Id. at ¶¶ 22, 23.) Shortly before furloughs were implemented, A.U.'s behavior worsened. (Id. at ¶ 24). After furloughs, A.U. continued to behave poorly. Mother and the clinical psychologist observed an increase in A.U.'s negative behaviors after furloughs. (Id. at ¶¶ 25-27, 29.)

After furloughs were implemented, the DOE created "furlough adjustment plans" to attempt to provide the services outlined in the IEP. (Id. at ¶ 30.) The DOE lengthened the school day from 4:30 to 5:30 p.m. and provided

school on Sundays for a few hours. (Id. at 2420-21, ¶¶ 30, 32.) According to the Student Services Coordinator ("SSC"), A.U. did not lose any minutes in the IEP as a result of the furloughs. The Behavioral Instructional Support Specialist opined that furlough Fridays did not negatively impact A.U. (Id. at 2421, 2423, ¶¶ 31, 41.) However, the clinical psychologist testified that the extended school day was too long for A.U. and that A.U. "burned out" during the last half hour. (Id. at 2422 ¶ 31.) Mother also testified that the Sunday school did not include other children or the special education teacher, and that the Sunday school was disruptive of the family routine. (Id. at ¶ 32.) Mother testified that the lack of consistency in A.U.'s schedule and the decrease in opportunities for A.U. to mainstream led to a regression of skills and worsening behavior. (Id. at 2423, ¶ 39.)

On October 20, 2009, A.U., along with other plaintiffs, filed a complaint seeking to halt the furloughs. (Opening Br. at 4); N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dept. of Educ., 600 F.3d 1104, 1108 (9th Cir. 2010). The students alleged that the DOE had violated the stay put provision of the Individuals with Disabilities Education Act ("IDEA"), which requires that the child remain in his current educational placement during the pendency of the proceedings. N.D., 600 F.3d at 1108; see 20 U.S.C. § 1415(j) (2006). District Judge David A. Ezra denied the motion for a temporary injunction. Id. Judge A.

4

Wallace Tashima later denied the students' motion for a preliminary injunction. Id. at 1108-09. The students appealed, and the Ninth Circuit affirmed the district court's denial of the students' motion for preliminary injunction. Id. at 1117.

On November 16, 2010, an administrative hearing was held in the instant case before the Office of Administrative Hearings. (Decision, R. at 2417.) On January 6, 2011, the Hearings Officer issued the Decision, concluding that: 1) the furlough Friday plan was not a change in A.U.'s educational placement in light of the Ninth Circuit's decision in N.D., 600 F.3d at 1117; 2) the school "unilaterally changed [A.U.]'s May 29, 2009 IEP[;]" 3) "furlough Fridays have affected the implementation of [A.U.]'s educational program, causing [A.U.] to not receive all of the socialization and mainstreaming opportunities provided for in his May 29, 2009 IEP, and not providing [A.U.] with the daily highly structured classroom environment that he needs[;]" and 4) the DOE violated HAR § 8-56-68(a)(1) by failing to provide prior written notice to the parents when changing A.U.'s program. (Id. at 2428-31.)[2]

---

[2] The Hearings Officer also concluded that the furlough Friday plan did not violate A.U.'s right to be educated in the least restrictive environment and that A.U. was not entitled to compensatory education. (R. at 2429-30.) A.U. did not raise the issue of whether he was educated in the least restrictive environment in his Responsive Brief. (Responsive Br. at 19-39.) Additionally, in light of the Court's conclusion that the Hearings Officer failed to properly apply the test to determine whether the DOE materially failed to implement the IEP, it is unnecessary to address the issue of compensatory education.

The DOE subsequently appealed to this Court, asserting that the Hearings Officer erred by: 1) determining that the DOE did not provide A.U. with a Free Appropriate Public Education because the implementation of furlough Fridays was a unilateral change in the program offered in the May 29, 2009 IEP; 2) misapplying Van Duyn ex rel. Van Duyn v. Baker School Dist. 5J, 502 F.3d 811, 822 (9th Cir. 2007) when concluding that the DOE materially failed to implement A.U.'s IEP; and 3) determining that the DOE violated HAR § 8-56-68(a)(1) and the IDEA by not providing prior written notice. (Opening Br. at 2.) In response, A.U. asserts that the Hearings Officer properly concluded that the DOE unilaterally changed A.U.'s program and materially failed to implement the IEP. (Responsive Br. at 21-34.) This Court FINDS and RECOMMENDS that the Hearings Officer's Decision be REVERSED and REMANDED because: 1) the DOE's implementation of furloughs did not constitute a unilateral change in A.U.'s educational program; and 2) the Hearings Officer failed to properly apply Van Duyn, 502 F.3d at 822.

## STANDARD OF REVIEW

"In an action challenging an administrative decision, the IDEA provides that 'the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on

6

the preponderance of the evidence, shall grant such relief as the court determines is appropriate.'" Ojai Unified School Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir. 1993) (quoting 20 U.S.C.A. § 1415(e)(2) (West 1990)). When reviewing state administrative decisions, "courts must give 'due weight' to judgments of education policy" and are not empowered to "substitute their own notions of sound educational policy for those of the school authorities which they review." Id. at 1472 (quoting Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987) (internal quotation marks omitted)). "How much deference to give state educational agencies, however, is a matter for the discretion of the courts[.]" Id. (quoting Gregory K., 811 F.2d at 1311) (internal quotation marks omitted). Deference to a hearing officer's findings is warranted where the findings are "thorough and careful." See J.L. v. Mercer Island Sch. Dist., 592 F.3d 938, 949 (9th Cir. 2010) (quoting JG v. Douglas County School Dist., 552 F.3d 786, 793 (9th Cir. 2008)).

## DISCUSSION

One purpose of the IDEA is to provide children with disabilities a Free Appropriate Public Education ("FAPE"). 20 U.S.C. § 1400(d)(1)(A). A FAPE is "special education and related services" that, in part, "are provided in conformity with the individualized education program [("IEP")] required under

7

section 1414(d) of this title." Id. § 1401(9) (emphasis added).  Under § 1414(d), "every disabled child must have an IEP drafted and put into effect by the local educational authority." Van Duyn, 502 F.3d at 818.  The IEP is formulated by a team including the child's parents, regular and special education teachers, and other individuals with relevant experience.  Id. (citing § 1414(d)(1)(B)).  The IEP addresses "the child's present level of academic achievement, annual goals for the child, how progress toward those goals is to be measured and the services to be provided to the child." Id. (citing § 1414(d)(1)(A)(i)).  The child's parents are entitled to participate in any meetings regarding the IEP, and must receive prior written notice of any proposed changes in the IEP.  Id. (citing § 1415(b)(1) & (3)). Under the IDEA, the child is entitled to have an education implemented in conformity with the IEP.  As discussed below, the Hearings Officer erred by concluding that the DOE changed the IEP and failed to implement the IEP.

I. <u>The Hearings Officer Erred By Concluding That the DOE Unilaterally Modified A.U.'s Educational Program.</u>

The Hearings Officer erred by concluding that the DOE unilaterally modified A.U.'s educational program because A.U. did not have the same mainstreaming or socialization opportunities after furloughs were imposed. (Decision, R. at 2428.)  In N.D., the plaintiffs argued that "because their current IEPs are their current educational placement and assume a five day school week,

the reduction of the school week constitutes a change in the general educational program of the student." 600 F.3d at 1117. The Ninth Circuit held that furloughs did not constitute a change in the educational program of the students because, while the IEPs assume five day weeks, they also assume some four day weeks for holidays. Id. The Ninth Circuit held that the "four day weeks created by the furloughs are no different and do not constitute changes in N.D.'s educational program." Id. This holding disposes of A.U.'s argument that the imposition of furloughs constituted a change in his educational program. See S.M. v. Hawaiʻi Dept. of Educ., 2011 WL 1527068, at *9 (D. Haw. Apr. 20, 2011) (holding that N.D. "forecloses any argument that the State of Hawaiʻi's decision to implement furloughs, in general, constituted a denial of a free appropriate public education to Student."). Instead, the Ninth Circuit held that students impacted by furloughs could bring a claim for material failure to implement the IEP, and that a "school district's failure to provide the number of minutes and type of instruction guaranteed in an IEP could support a claim of material failure to implement an IEP." N.D., 600 F.3d at 1117. Thus, the DOE did not change A.U.'s educational program by implementing furlough Fridays.

II.     The Hearings Officer Failed to Apply Van Duyn Properly.

        The Hearings Officer determined that the DOE materially failed to

implement A.U.'s IEP by failing to provide A.U. with a "highly structured classroom environment daily" and reducing A.U.'s opportunities to interact with peers. (Decision, R. at 2427, 2428-29.) The DOE argues that the Hearings Officer misapplied Van Duyn and that A.U.'s behavior improved despite the furloughs. (Opening Br. at 35-46.) A.U. asserts that the Hearings Officer correctly applied Van Duyn because the disruption of services after furloughs began constituted a material failure to implement A.U.'s IEP. (Responsive Br. at 24-34.) The Court FINDS that the Hearings Officer failed to apply Van Duyn properly.

In Van Duyn, the Ninth Circuit held that a "material failure to implement an IEP" violates the IDEA. 502 F.3d at 822. The Ninth Circuit explained that a material failure occurs when "there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP." (Id.) A child's educational progress is probative of whether a material failure to implement the IEP occurred. Id. Under Van Duyn, the administrative agency evaluating a claim for material failure to implement the IEP must contrast the education the child is receiving with the education the child is entitled to under the IEP, and determine whether the shortfall is material. See N.D., 600 F.3d at 1117 ("A school district's failure to provide the number of minutes and type of instruction guaranteed in an IEP could support a

claim of material failure to implement an IEP."); Wilson v. District of Columbia, 770 F. Supp.2d 270, 275 (D.D.C. 2011) ("Rather, courts applying the materiality standard have focused on the proportion of services mandated to those actually provided, and the goal and import (as articulated in the IEP) of the specific service that was withheld.") (citing Van Duyn, 502 F.3d at 822) (some citations omitted).

        In this case, the Hearings Officer misapplied Van Duyn by concentrating on the effects of the furloughs in general instead of focusing on whether the DOE's furlough adjustment plan materially failed to implement the IEP. The Hearings Officer focused on A.U.'s lessened opportunities to interact with other children and the disruption of A.U.'s schedule because of furloughs. (Decision, R. at 2427, 2428-29.) However, when determining that the DOE materially failed to implement the IEP, the Hearings Officer failed to meaningfully analyze the furlough adjustment plan and whether it differed from specific provisions in the IEP. (See id.) For instance, the Hearings Officer failed to make specific findings or conclusions as to whether A.U. received all of the instructional time in the IEP and whether the difference was a material failure. Although the Hearings Officer later contrasted the furlough adjustment plan with an ordinary school day in his discussion of compensatory education (Id. at 2430-31), the Hearings Officer found that "the extended school hours and Sunday school at the

home school were not equivalent to a Friday school day[,]" rather than assessing whether the DOE materially failed to implement the IEP. (See id. at 2431.) While the Court sympathizes with the parents because of the problems created by furloughs in general, Van Duyn requires a more rigorous analysis of whether the State, despite the furlough adjustment plan, materially failed to implement specific provisions of A.U.'s IEP. Therefore, the Court FINDS and RECOMMENDS that the Hearings Officer's Decision be REVERSED and that the case be REMANDED to the Hearings Officer to consider the application of Van Duyn. In light of this conclusion, it is unnecessary to address A.U.'s remaining claim regarding prior written notice because 20 § U.S.C. 1415(b)(3)(A) and HAR § 8-56-68(a)(1) require a change in the educational placement or provision of a FAPE to the child to trigger the DOE's obligation to provide notice. See HAR § 8-56-68(a)(1) (requiring written notice when the department proposes "to initiate or change the . . . educational placement of the student or the provision of a free appropriate public education to the student"); 20 § U.S.C. 1415(b)(3)(A) (same).

## CONCLUSION

For the foregoing reasons, the Court FINDS and RECOMMENDS that the case be REVERSED and REMANDED to the Hearings Officer to consider the application of Van Duyn.

DATED: Honolulu, Hawaii, November 22, 2011.

IT IS SO FOUND AND RECOMMENDED.



   /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Dept. of Educ., State of Hawaii v. A.U. et al., Civ. No. 11-00085 AWT-BMK; FINDINGS AND RECOMMENDATION THAT THE ADMINISTRATIVE HEARINGS OFFICER'S DECISION BE REVERSED AND THE CASE BE REMANDED TO THE ADMINISTRATIVE HEARINGS OFFICER